UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| JOEL MOMBREA, | |
| Plaintiff, | **REPORT**<br>**and** |
| v. | **RECOMMENDATION** |
| UNITED STATES OF AMERICA, | 09-CV-01036A(F) |
| Defendant. | |

---

APPEARANCES:   LIPSITZ GREEN SCIME CAMBRIA LLP
Attorneys for Plaintiff
GREGORY P. KRULL, of Counsel
42 Delaware Avenue
Suite 120
Buffalo, New York 14202

WILLIAM J. HOCHUL, JR.
United States Attorney
Attorney for Defendant
MARY K. ROACH
Assistant United States Attorney, of Counsel
Federal Centre
138 Delaware Avenue
Buffalo, New York  14202

## **JURISDICTION**

This case was referred to the undersigned by Honorable Richard J. Arcara on June 30, 2010, for all pretrial matters, including preparation of a report and recommendation on dispositive motions.  The matter is presently before the court on Defendant's motion for summary judgment (Doc. No. 42), filed September 28, 2011.

## **BACKGROUND**

Plaintiff Joel Mombrea ("Plaintiff"), commenced this action on December 7, 2009,

seeking to recover money damages for personal injuries Plaintiff sustained on December 10, 2007, at Buffalo Niagara International Airport in Cheektowaga, New York.  Because Plaintiff attributes the circumstances under which his injury occurred to the Transportation Security Administration ("TSA"), the action is against the United States of America pursuant to the Federal Tort Claims Act of 1948, 28 U.S.C. §§ 1346(b), 2671-80.  Defendant's answer was filed on June 1, 2010.

On September 28, 2011, Defendant filed the instant motion for summary judgment (Doc. No. 42) ("Defendant's motion"), Defendant's Statement of Material Facts as to Which There Is No Genuine Issue to be Tried (Doc. No. 43) ("Defendant's Statement of Facts"), exhibits A through C (Doc. No. 44) ("Defendant's Exh(s). __"), and the Memorandum of Law in Support of Defendant's Motion for Summary Judgment (Doc. No. 45) ("Defendant's Memorandum").  On October 28, 2011, Plaintiff filed Plaintiff's Opposing Affirmation of Gregory P. Krull, Esq. to Defendant's Motion for Summary Judgment (Doc. No. 47) ("Krull Affirmation"), attached to which are Plaintiff's Appendix to Statement of Disputed Material Facts (Doc. No. 47-1) ("Plaintiff's Opposing Statement of Facts"), exhibits A through E (Doc. No. 47-2) ("Plaintiff's Exh(s). __"), Plaintiff's Statement of Disputed Material Facts (Doc. No. 47-3) ("Plaintiff's Statement of Disputed Facts"), and Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment (Doc. No. 47-4) ("Plaintiff's Response").  On November 16, 2011, Defendant filed the Reply Memorandum of Law in Further Support of Defendant's Motion for Summary Judgment (Doc. No. 51) ("Defendant's Reply"), with attached exhibit A ("Defendant's Reply Exh. A").  Oral argument was deemed unnecessary.

Based on the following, Defendant's motion for summary judgment should be GRANTED.

# FACTS[1]

TSA, a component agency of the United States Department of Homeland Security, is responsible for inspecting passengers and baggage at the airport's security checkpoint. Pursuant to a License Agreement with the Niagara Frontier Transportation Authority ("NFTA"), TSA has established and operates a security checkpoint, including placing and operating screening equipment and performing other inspection activities TSA deems necessary to perform its functions under federal law, within the Buffalo Niagara International Airport ("the airport"), located in Cheektowaga, New York. TSA contracted with S&W Contracting of WNY ("S&W"), for janitorial services, including mopping and sweeping the floors in the security checkpoint area, where the flooring is a multicolored terrazzo. S&W cleans the floor once a day and, although S&W is not required to continually visually monitor the premises, S&W performs further cleaning when notified by TSA about a spill, liquid, or broken glass.

On December 10, 2007, Plaintiff Joel Mombrea ("Plaintiff" or "Mombrea"), went to the airport intending to board a flight to Fort Lauderdale, Florida. Plaintiff approached the airport's security checkpoint and placed his carry-on luggage on the checkpoint's conveyor belt for X-ray inspection, placed his jackets, sneakers, belt, cell phone, and toiletry bag inside a plastic bin on the conveyor belt, and then walked

---

[1] Taken from the pleadings and motion papers filed in this action.

through the metal detector.  Having removed his sneakers for inspection, Plaintiff's feet were clothed only in white sport socks.  Nothing on Plaintiff's person activated the metal detector through which Plaintiff walked, and Plaintiff proceeded to the end of the conveyor belt to retrieve his inspected belongings.  Upon reaching the end of the conveyor belt, Plaintiff was advised that further screening of his toiletry bag was required, and a TSA agent requested Plaintiff proceed to a search table in the inspection area located six to ten feet away from the checkpoint's conveyor belt.  The TSA agent carried the plastic bin containing Plaintiff's belongings to the search table.  Because Plaintiff's sneakers were still in the plastic bin, Plaintiff was in his stocking feet when he followed the TSA agent to the inspection area.

    At the search table, a TSA agent opened Plaintiff's toiletry bag and searched it.  While his toiletry bag was being inspected, Plaintiff felt an irritation in the heel of his right foot.  Brushing his right heel with his hand, Plaintiff felt something sharp, then noticed blood on his hand.  Plaintiff looked at his foot and noticed a small hole surrounded by blood in the heel of his sock.  Plaintiff then observed blood on the floor underneath where his right foot had been, but did not notice any other blood on the floor in the area of the security checkpoint.  Still shoeless, Plaintiff walked to a nearby bench where he sat down, removed the sock from his right foot, and pulled a thin piece of transparent pale green glass measuring approximately 3/4 to an inch in length from the heel of his right foot.  Niagara Frontier Transportation Authority Statement ("NFTA Statement")[2] at 1 (estimating the piece of glass Plaintiff removed from his foot as

---

[2] A copy of the NFTA Statement completed by Plaintiff on March 3, 2008 regarding the accident is filed as Defendant's Exh. E.

measuring ¾ of an inch in length); Plaintiff's Dep. Tr.[3] at 40 (estimating the length of the glass shard as "[p]robably pretty close to an inch, maybe a little less."). After removing the glass shard, Plaintiff's foot continued to bleed and Plaintiff asked Andrew Wagner, the TSA supervisor then on duty, if Plaintiff could see a physician. Wagner responded he would see what was available, walked away, and returned moments later with some alcohol and a bandage. Plaintiff cleaned his injured foot with the alcohol, applied the bandage, put on his sneakers, and boarded his flight.[4]

After Plaintiff left the security checkpoint area, Wagner went to the checkpoint lane through which Plaintiff had passed for inspection, and searched for, but did not find, any debris, glass, or blood stains on the floor. Although TSA employees are required to be aware of their surrounding conditions and potential hazards, and to notify a supervisor of any debris, glass, or unsafe conditions, Wagner was never informed of any unsafe or hazardous condition relevant to the circumstances under which Plaintiff injured his foot.

Once on board his plane, subsequent to take-off, Plaintiff asked a flight attendant if she had a first aid kit and Plaintiff was taken to the front of the plane and instructed to remove his sneaker. From the first aid kit the flight attended retrieved from the plane's cabin, Plaintiff was given supplies to further clean and bandage the wound. Plaintiff had to repeat the cleaning and apply new bandages later in the flight.

After the flight landed, Plaintiff sought medical attention for his injured foot at

---

[3] References to "Plaintiff's Dep. Tr." are to the page of the transcript of Plaintiff's February 7, 2011 deposition, a copy of which is filed as Defendants' Exh. D.

[4] It is not clear from the record whether Plaintiff continued to wear his blood-stained sock when he put his sneakers back on his feet.

Memorial Hospital ("the hospital") in Pembroke Pines, Florida, where the wound was cleaned and X-rayed. The hospital's attending physician advised Plaintiff the would was so deep and narrow it could not be stitched without causing more damage, instructed Plaintiff to clean the wound three times a day, and to wear flip-flops, prescribed an antibiotic, and further advised Plaintiff to undergo an MRI of the heel.

On December 18, 2007, Plaintiff underwent an MRI of his right heel which showed no glass or foreign objects present, but did show a partial tear of the posterior aspect of Plaintiff's right Achilles tendon. A nerve conduction test was then performed which showed nerve damage in Plaintiff's right lower leg. Plaintiff was prescribed additional antibiotics and pain medication and referred to an orthopedist for surgical repair of the Achilles tendon. Plaintiff, who has been wearing an air cast on his right foot since injuring his foot, maintains that if he undergoes the recommended surgical repair of his right Achilles tendon, following such surgery Plaintiff would be restricted from weight-bearing activities for six weeks, and then undergo six weeks of physical therapy. Plaintiff, a carpenter who is self-employed and owns his own business installing custom closets, further maintains he would be unable to work during the projected three months post-surgery recovery, resulting in lost income of $ 4,000 to $ 5,000 for each of the three months.

## **DISCUSSION**

Defendant moves for summary judgment arguing Plaintiff cannot establish a *prima facie* case of negligence under New York law because Defendant neither created a dangerous and hazardous condition, nor had actual or constructive notice of such

condition. Defendant's Memorandum at 7-14. In opposing summary judgment, Plaintiff argues that Defendant failed to maintain the airport's security checkpoint in a reasonably safe condition in light of the circumstances, particularly that airplane passengers were required to walk shoeless in the area, Plaintiff's Response at 2-5, and that Defendant breached its duty to conduct reasonable inspections of the security checkpoint area, negating the issue of whether Defendant had actual or constructive notice of the hazardous condition. *Id.* at 5-7. In further support of summary judgment, Defendant argues that Plaintiff has failed to present any evidence establishing Defendant had actual or constructive notice of the hazardous condition in the security checkpoint area, Defendant's Reply at 1-2, that the glass on which Plaintiff stepped and became embedded in Plaintiff's foot was observed or would have been observed in the course of an inspection of the area, *id.* at 3-5, that Defendant's requirement that passengers walk through the security checkpoint in stocking feet subjected the passengers to an increased likelihood of injury, *id.* at 7-9, and that requiring Defendant to constantly scrutinize the floor of the security checkpoint area would render Defendant "an insurer, liable for any injury in the checkpoint, no matter the nature of the hazard or how long it had been in place." *Id.* at 10. Defendant also objects to Plaintiff's reliance on a deceased expert whose opinion is expressed in a letter to Plaintiff's counsel, but is unsworn. *Id.* at 10-12. Finally, Defendant objects to Plaintiff's assertion that the issue of actual or constructive notice is irrelevant where a defendant has a duty to conduct reasonable inspections. *Id.* at 12-13.

Summary judgment of a claim or defense will be granted when a moving party demonstrates that there are no genuine issues as to any material fact and that a

moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a) and (b); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-51 (1986); *Rattner v. Netburn*, 930 F.2d 204, 209 (2d Cir. 1991). The court is required to construe the evidence in the light most favorable to the non-moving party. *Tenenbaum v. Williams*, 193 F.3d 58, 59 (2d Cir. 1999) (citing *Anderson, supra*, 477 U.S. at 255); *Rattner, supra*. The party moving for summary judgment bears the burden of establishing the nonexistence of any genuine issue of material fact and if there is any evidence in the record based upon any source from which a reasonable inference in the non-moving party's favor may be drawn, a moving party cannot obtain a summary judgment. *Celotex*, 477 U.S. at 322; *see Anderson*, 477 U.S. at 247-48 ("summary judgment will not lie if the dispute about a material fact is "genuine," that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

"[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.' Such a motion, whether or not accompanied by affidavits, will be 'made and supported as provided in this rule [FRCP 56],' and Rule 56(e) therefore requires the non-moving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex, supra*, 477 U.S. at 323-24 (1986) (quoting Fed. R. Civ. P. 56). Thus, "as to issues on which the non-moving party bears the burden of proof, the moving party may simply point out the absence of evidence to

support the non-moving party's case." *Nora Beverages, Inc. v. Perrier Group of America, Inc.*, 164 F.3d 736, 742 (2d Cir. 1998).  Once a party moving for summary judgment has made a properly supported showing as to the absence of any genuine issue as to all material facts, the nonmoving party must, to defeat summary judgment, come forward with evidence that would be sufficient to support a jury verdict in its favor. *Goenaga v. March of Dimes Birth Defects Foundation*, 51 F.3d 14, 18 (2d Cir. 1995). "[F]actual issues created solely by an affidavit crafted to oppose a summary judgment motion are not 'genuine' issues for trial." *Hayes v. New York City Dept. of Corrections*, 84 F.3d 614, 619 (2d Cir. 1996).

As relevant, the Federal Tort Claims Act provides that the federal government has consented to be sued for negligent or wrongful acts or admissions of its employees acting within the scope of their employment "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."  28 U.S.C. § 1346(b).  Accordingly, the issues of liability and damages are to be determined under the law of New York where the accident in question occurred.  *DiPirro v. United States*, 43 F.Supp.2d 327, 341 (W.D.N.Y. 1999).

"To establish a *prima facie* case of negligence under New York law, 'a plaintiff must demonstrate (1) a duty owed by the defendant to the plaintiff, (2) a breach thereof, and (3) injury proximately resulting therefrom.'" *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 286 (2d Cir. 2006) (quoting *Solomon ex rel. Solomon v. City of New York*, 489 N.E.2d 1294, 1294-95 (N.Y. 1985)).  It is axiomatic that a party cannot be held liable in negligence absent a duty of care to the injured person.  *Balsam v. Delma Engineering*

*Corp.*, 532 N.Y.S.2d 105, 108 (1st Dep't) (citing *Palsgraf v. Long Island R.R.Co.*, 162 N.E. 99, 99-100, *reh. den.* 164 N.E. 564 (N.Y. 1928)), *lv. dismissed in part and denied in part*, 533 N.E.2d 67 (N.Y. 1988).  "In cases involving liability for injuries arising from conditions on property, the existence of a duty generally depends upon 'occupancy, ownership, control or a special use of [the] premises.'" *Sutera v. GoJokir, Inc.* 86 F.3d 298, 302 (2d Cir. 1996) (quoting *Balsam*, 532 N.Y.2d at 108).  "Where none is present, a party cannot be held liable for injury caused by the defective or dangerous condition of the property." *Balsam*, 532 N.Y.S.2d at 108 (citing *Dick v. Sunbright Steam Laundry Corp.*, 121 N.E.2d 399 (N.Y. 1954)).  In the instant case, Defendant admits TSA controlled the area where Plaintiff's allegedly sustained his injury.  Defendant's Reply at 2.

It is the existence of Defendant's control of the area where Plaintiff's injury allegedly was sustained that gives rise to Plaintiff's duty of care.  *Clifford v. Woodlawn Volunteer Fire Company, Inc.*, 818 N.Y.S.2d 715, 716 (4th Dep't 2006) (citing *Balsam*, 532 N.Y.S.2d at 108).  "'A landowner must act as a reasonable [person] in maintaining his [or her] property in a reasonably safe condition in view of all the circumstances, including the likelihood of injury to others, the seriousness of the injury, and the burden of avoiding the risk.'" *Peralta v. Henriquez*, 790 N.E.2d 1170, 1173 (N.Y. 2003) (quoting *Basso v. Miller*, 352 N.E.2d 868, (N.Y. 1976)) (brackets in original).  "The use to which one's property is put, and the frequency of that use by others, weigh heavily in determining the likelihood of injury, the seriousness of the injury and the burden of avoiding the risk." *Peralta*, 790 N.E.2d at 1173.

Nevertheless, "'[t]he duty of a landowner or other tort defendant . . . is not

limitless.'" *Taylor v. United States*, 121 F.3d 86, 89 (2d Cir. 1997) (quoting *DiPonzio v. Riordan*, 679 N.E.2d 616, 618 (N.Y. 1997)). Provided the landowner did not create the dangerous condition, the landowner "is liable for negligence when a condition on his land causes injury only when the landowner had actual or constructive notice of the condition." *Taylor*, 121 F.3d at 89-90 (citing *Gordon v. American Museum of Natural History*, 492 N.E.2d 774, 775 (N.Y. 1986)). In the instant case, Plaintiff does not alleged that Defendant had actual notice of any glass on the floor in the area in which Plaintiff was required to walk without his shoes after passing through the airport's metal detector; as such, the Complaint can only be construed as alleging Defendant's notice of the glass hazard was constructive.

"'To constitute constructive notice, a defect must be visible and apparent and it must exist for a sufficient length of time prior to the accident to permit defendant's employees to discover and remedy it.'" *Taylor*, 121 F.3d at 90 (quoting *Gordon*, 492 N.E.2d at 775). Neither a "general awareness" of either a dangerous condition, or that the plaintiff observed a similarly dangerous condition in the area moments before an accident "is legally sufficient to charge defendant with constructive notice" of the dangerous condition that caused Plaintiff's injury. *Gordon*, 492 N.E.2d at 775. Such awareness, while relevant to the causation element, is insufficient to establish the requisite constructive notice of the particular condition that caused Plaintiff's injury. *Id.* Further, "awareness of a *general* dangerous condition is not enough to charge a defendant with constructive notice of the *particular* dangerous condition that caused an injury." *Taylor*, 121 F.3d at 90 (italics in original). "Constructive notice of a *particular* condition is inextricably intertwined with the concept of foreseeability." *Id.* (italics in

original). "In constructive notice cases, when knowledge of a broadly defined, generalized danger is imputed to a defendant, it is less likely that the defendant would reasonably foresee the particular risk of injury sustained by the plaintiff." *Id.* As such, the facts of each case must be examined "to determine whether the plaintiff has proven notice of a dangerous condition at a level of specificity sufficient to support liability." *Id.* Further, mere speculation will not support a finding of constructive notice. *Gordon*, 492 N.E.2d at 775.

Similar to the instant case, the plaintiff in *Gordon* sought to recover for injuries sustained after slipping on a piece of waxy paper and falling on the defendant's front entrance steps. *Gordon*, 492 N.E.2d at 774. The plaintiff alleged that the paper on which he slipped came from a concession stand the defendant had contracted to have present and which was located on the plaza near the stairway where the accident occurred, and that the defendant was negligent insofar as the defendant's employees failed to discover the paper and remove it before the defendant's accident. *Id.* The New York Court of Appeals, observing there was no evidence that anyone, including the plaintiff, had observed the piece of waxy paper prior to the accident, nor was the paper on which the plaintiff slipped described as worn or dirty so as to indicate the paper had been present on the steps for some time prior to the accident, found "on the evidence presented, the piece of paper that cause plaintiff's fall could have been deposited there only minutes or seconds before the accident and any other conclusion would be pure speculation." *Id.* at 775. Under the circumstances present in *Gordon*, "[t]he defect in plaintiff's case . . . is not an inability to prove the causation element of his fall, but the lack of evidence establishing constructive notice of the particular

condition that caused his fall." *Id.  See also Taylor*, 121 F.3d at 91 (holding record established district court applied correct level of specificity to show constructive notice of defect in door that injured child's finger, requiring partial amputation, *i.e.*, that door closer was malfunctioning at the time of the accident, but not that such malfunction was caused by ruptured seal within the door closer).

In the instant case, Plaintiff has also failed to point to any evidence from which a reasonable factfinder could find that Defendant had constructive notice of the shard of glass on which Plaintiff stepped and which became embedded in Plaintiff's right heel, causing a partial tear in Plaintiff's Achilles tendon resulting in nerve damage, because the glass shard was visible and apparent and must have lain on the flood for a sufficient length of time before Plaintiff stepped on it to permit Defendants' employees to discover the glass and remove it.  *Taylor*, 121 F.3d at 90.  To the contrary, all the evidence in the record establishes only a lack of constructive notice.  For example, Plaintiff's own deposition statements include that as he walked through the airport's metal detector, Plaintiff did not observe any debris or glass on the floor in the area of the metal detector and the inspection area's search table where Plaintiff was required to walk in his stocking feet, nor did Plaintiff hear any glass breaking.  Plaintiff's Dep. Tr. at 29-32.  Although people in the security checkpoint area were wearing wet, snowy boots, Plaintiff denied seeing any puddles of water, or persons slipping or falling.  *Id.* at 45.  Except for some blood that emanated from Plaintiff's injured heel, that Plaintiff's socks were not otherwise dirty, *id.* at 45-46, demonstrates that the floor in the airport's security checkpoint area was clean.  This is consistent with Plaintiff's own assertions that he did not know precisely where he stepped on the piece of glass, nor how long the piece of

glass was on the floor before Plaintiff stepped on it.  *Id.* at 87-88, 115.  Moreover, such uncertainty suggests the equally plausible possibility that the shard, which Plaintiff himself estimated at no more than an inch in length, and further described as thin, transparent, and light green in color, *id.* at 39-40,[5] became embedded in Plaintiff's foot while Plaintiff was walking elsewhere prior to entering the TSA security checkpoint area, but remained undetected until Plaintiff's shoe was removed and Plaintiff's foot then came into contact with the hard floor surface without the cushioning effect of his sneakers.  Although the circumstances of Plaintiff's injury are admittedly unfortunate, in the absence of any evidence that could possibly be found by a trial court as establishing the presence of the inch-long shard of thin, transparent glass in the area for any amount of time, a finding of constructive notice would be pure speculation which is insufficient to charge Defendant with constructive notice of the dangerous condition that caused Plaintiff's injury.  *Gordon*, 492 N.E.2d at 775.

Significantly, there is no evidence of other broken glass in the area, or of any spilled liquid or other substance, or of any noise suggesting the shattering of a glass container.  The only evidence Plaintiff submits in opposing summary judgment is the opinion of Plaintiff's expert, Robert F. Stuart, Jr. ("Stuart"), since deceased.  Stuart opined that because passengers at the airport are required to walk in their stocking feet through airport security, which is controlled, supervised, operated and maintained by TSA, TSA had a duty "to diligently inspect the entire flooring surface and promptly

---

[5] Plaintiff stated he did not keep the glass shard after pulling it out of his foot, but does not recall if whether he left the shard on the bench or put it on the floor.  Plaintiff's Dep. Tr. at 40-41.

remove any hazards within the security area . . . ." Stuart Report at 1-2.[6]  According to Stuart, TSA's "fail[ure] to visually monitor all areas of the flooring surface traversed by passenger[s] in their stocking feet during all time periods when passengers are permitted access through security checkpoints" constituted negligence. *Id.* at 2.  Stuart further opined that had TSA properly inspected, managed, and maintained the floor's safety "through constant visual monitoring, the broken glass upon which Mr. Mombrea stepped would have been discovered and removed in a timely manner thus preventing the incident from occurring." *Id.*

The Stuart Report, however, is unsigned and, thus, is insufficient to avoid summary judgment.  *See United States v. All Right, Title and Interest in Real Property and Appurtenances*, 77 F.3d 648, 657-58 (2d Cir. 1996) (affirming district court's determination that unsworn letter submitted in opposition to summary judgment "was an inappropriate response to the government's motion for summary judgment, and the factual assertions made in that letter were properly disregarded by the court." (citing Fed.R.Civ.P. 56(c) and (e)); *see also Berk v. St. Vincent's Hospital and Medical Center*, 380 F.Supp.2d 334, 352-53 (S.D.N.Y. 2005) ("unsworn expert reports do not satisfy the admissibility requirements of Fed.R.Civ.P. 56(e), and cannot be used to defeat a summary judgment motion without additional affidavit support.").[7]  Even were the Stuart Report signed, the statements contained therein, specifically, that had TSA properly

---

[6] Plaintiff's Exh. D.

[7] The court notes that although Stuart passed away on September 27, 2011, one day before Defendant filed the instant motion seeking summary judgment, and after the July 15, 2011 deadline for providing expert witness reports, Plaintiff never moved pursuant to Fed.R.Civ.P. 56(d) for more time to obtain another expert to produce a sworn report to oppose summary judgment.

inspected, managed, and maintained the floor's safety "through constant visual monitoring, the broken glass upon which Mr. Mombrea stepped would have been discovered and removed in a timely manner thus preventing the incident from occurring," unsupported by any evidence, are mere speculation especially given that transparent nature of the thin, pale green, shard of glass on which Plaintiff stepped would have rendered the visual observation of the glass quite difficult.  Significantly, as discussed above, Discussion, *supra*, at 11, speculation alone is insufficient to establish constructive notice.   Moreover, the Stuart Report is devoid of any evidence suggesting that more frequent visual inspection and sweeping of the floor is the generally accepted standard inspection protocol for airport security screenings.

   Nor is there any merit to Plaintiff's argument, Plaintiff's Memorandum at 4, that because passengers at the airport were required to pass, in stocking feet, through airport security, TSA had a heightened duty of care in maintaining the premises to ensure the safety of passengers.  In support of this argument, Plaintiff relies, erroneously, on *Preston v. State of New York*, 453 N.E.2d 1241 (N.Y. 1983).  At issue in Preston was whether New York State was liable for injuries sustained by a child who, while wading in a swimming area maintained by the state, tripped and cut his leg on a rusty, jagged pipe within two inches of the water's surface, and which evidence at trial established had been present in that condition for at least four years.  *Preston*, 453 N.E.2d at 1241-42.  Although the New York Court of Appeals held that "[u]nder the circumstances, the State had a duty either to inspect and remove hazards from the water or to give warning that the waters were used at the swimmer's risk," there was "no question that the State never inspected the lagoon where claimant was injured nor

...
...
...

posted any warning signs." *Id.* at 1242. As such, the "[c]laimant's accident was a foreseeable consequence of these omissions . . . ." *Id.* The Court of Appeals, however, *in dicta*, reiterated that the State was not required "to scrutinize every square foot of riverbed and lakebottom that it owns." *Id.* Although it is the invitation to the public to swim in the area that gave rise to the State's duty to inspect, "this does not make the State an insurer, liable for every injury no matter the nature of the hazard or how long it has been in place. There must be some proof that the potential danger reasonably could have been neutralized and that its existence was or should have been discovered by the State." *Id.* Here, given the relatively clean condition of the floor, as evidenced by the fact that in spite of the snowy boots worn by passengers at the airport, Plaintiff observed no puddles of water and his socks, with the exception of the blood stain from his injured heel, were not dirty, can establish only that TSA did not fail to observe and notify S&W of any spills or hazards suggesting the possible presence of a shattered glass container, including the inch long piece of transparent, thin glass on which Plaintiff stepped, much less that such spill or hazard was present for a sufficient length of time that it should have been discovered and neutralized, and S&W was not derelict in its duty to sweep the floor in the security checkpoint area upon being advised of any hazard.

As such, in the absence of any evidence on which a finder of fact could determine Defendant had constructive notice of the thin shard of glass, measuring at most an inch in length, on which Plaintiff stepped, summary judgment should be GRANTED in favor of Defendant.

## **CONCLUSION**

Based on the foregoing, Defendant's motion (Doc. No. 42) seeking summary judgment should be GRANTED; the Clerk of the Court should be directed to close the file.

Respectfully submitted,

/s/ *Leslie G. Foschio*

LESLIE G. FOSCHIO<br>UNITED STATES MAGISTRATE JUDGE

DATED:    September 6 2012
               Buffalo, New York

ORDERED that this Report and Recommendation be filed with the Clerk of the Court.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(d) of the Federal Rules of Civil Procedure and Local Rule 72.3.

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** *Thomas v. Arn,* 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Limited,* 838 F.2d 55 (2d Cir. 1988).

Let the Clerk send a copy of this Report and Recommendation to the attorneys for the Plaintiff and the Defendants.

SO ORDERED.

/s/ *Leslie G. Foschio*

---
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:   September 6, 2012
         Buffalo, New York